IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 18-cv-00749-PAB-NYW

JEANNE B. BRYANT, in her capacity as court-appointed Independent Fiduciary for Retirement Security Plan and Trust,

    Plaintiff,

v.

MATRIX TRUST COMPANY, LLC (f/k/a MG Trust Company, LLC), a Colorado limited liability company,

    Defendant.

---

# ORDER

---

This matter comes before the Court on defendant Matrix Trust Company, LLC's Renewed Motion to Dismiss the Complaint and Brief in Support [Docket No. 37]. The Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

## I. BACKGROUND

The allegations in plaintiff's Complaint [Docket No. 1] are to be taken as true in considering a motion to dismiss. *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011). The Court will also consider attached exhibits and documents incorporated into the complaint by reference. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

This case arises out of misfeasance by a plan trustee. Plaintiff is the court-appointed fiduciary for Retirement Security Plan and Trust ("RSPT"), a trust comprised of various retirement plans. Docket No. 1 at 2, ¶ 1-2. RSPT's original named trustee

was Matthew D. Hutcheson ("Hutcheson"). *Id*. at 3, ¶ 8. RSPT's sponsor and administrator was Hutcheson Walker Advisors, LLC ("HWA") and its third-party administrator was ASPire Financial Services ("ASPire"). *Id*., ¶¶ 8, 11, 13. Defendant, doing business as "MG Trust Company, LLC," entered into a Custodial Account Agreement (the "Custodial Agreement") with HWA and Hutcheson in 2009. Docket No. 1-2. Under the Custodial Agreement, defendant agreed to "take, hold, invest, and distribute all of the assets of [RSPT] . . . as a non-discretionary, directed custodian." *Id*. at 7. The Custodial Agreement provided for a Designated Representative – here, ASPire – who would "provide direction to [defendant]" by "provid[ing] [i]nstructions" on behalf of RSPT. *Id*. at 8.[1] The instructions provided by ASPire could include "plac[ing] orders for the purchase and sale of securities" and authorizing disbursement of funds on RSPT's behalf. *Id*. The Custodial Agreement provided that defendant "shall be under no duty to make an investigation with respect to any [i]nstructions received from [ASPire]." *Id*. The Custodial Agreement also provides that Hutcheson, as Trustee, "has the power to delegate trading authorization to [ASPire] and has done so by executing [the Custodial Agreement]." *Id*. at 14.

On December 21, 2010, Hutcheson emailed ASPire, instructing it to make a request to defendant to transfer $275,000 of RSPT assets to an account which later turned out to be controlled by Hutcheson. Docket No. 1 at 6, ¶ 28. ASPire made the request to defendant. *Id.*, ¶ 29. Upon receipt of the instructions, defendant transferred

---

[1] The Custodial Agreement is signed by "Michael Gottfried" as the Designated Representative, who signed on behalf of "401k ASP, Inc." *See* Docket 1-2 at 6, 17. Plaintiff does not allege that any other party was the Designated Representative.

2

the funds. *Id.* On December 23, 2010, Hutcheson instructed ASPire to have defendant transfer $3,001,000 of RSPT assets to a real estate title company in order to purchase a bank note. *Id.*, ¶ 30. Again, ASPire did so, and defendant followed the instructions. *Id.*, ¶ 32. Hutcheson used the $3,276,000 to purchase the bank note for the benefit of a company owned or controlled by Hutcheson. *Id.*, ¶ 33. Hutcheson gave a promissory note to RSPT. *Id.*, ¶ 34. Because the transaction between RSPT and a company owned or controlled by Hutcheson was a "prohibited transaction," the United States Department of Labor began an investigation. *Id.* at 8, ¶¶ 43-44. The Department of Labor removed Hutcheson as trustee and appointed plaintiff as his replacement. *Id.*, ¶ 46. Hutcheson was eventually charged with crimes related to the transfer of funds. *Id.*, ¶ 47. A jury found Hutcheson guilty of wire fraud. *Id.*, ¶ 49.

On December 30, 2016, plaintiff filed this lawsuit in the District of Idaho. Docket No. 1. Plaintiff asserts five claims for relief: (1) breach of fiduciary duty under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, to prudently manage RSPT's assets; (2) breach of fiduciary duty under ERISA to administer RSPT in accordance with its terms; (3) professional negligence; (4) state law breach of fiduciary duty; and (5) attorney's fees and costs. *Id.* at 9-16, ¶¶ 52-84. Defendant moved to dismiss under Fed. R. Civ. P. 12(b)(3) and 12(b)(6), arguing that (1) venue was improper in the District of Idaho and (2) plaintiff failed to state a claim upon which relief could be granted. Docket No. 10-1. The Idaho court granted the motion to dismiss in part and denied it in part, concluding that venue was not proper in Idaho and transferring the case to this Court. Docket No. 30 at 13. The Idaho court did

not reach the question of whether plaintiff had stated a claim under Fed. R. Civ. P. 12(b)(6). Docket No. 27 at 19 n.4 (report and recommendation of magistrate judge).

Defendant subsequently filed a renewed motion to dismiss. Docket No. 37. Defendant argues that: (1) plaintiff's claims under ERISA fail because she does not allege facts that plausibly show that defendant was an ERISA fiduciary with respect to RSPT; (2) plaintiff's claim for professional negligence is barred by the statute of limitations, the economic loss rule, and waiver; and (3) plaintiff's state law claim for breach of fiduciary duty is preempted by ERISA or is otherwise barred. *Id*. at 8-16.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks and alteration marks omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim. *Khalik*, 671 F.3d at 1191 (quotations omitted). Thus, even though modern rules of pleading are somewhat

4

forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (alteration marks omitted ).

III. **ANALYSIS**

   A. <u>**ERISA Claims**</u>

Defendant argues that plaintiff's ERISA claims fail because she has not plausibly alleged that defendant is a fiduciary under ERISA with respect to RSPT. Docket No. 37 at 8.

"ERISA designates as fiduciaries not only those persons expressly named by a plan, but also those persons who exercise control over the management and administration of the plan and the distribution of its assets [and] individuals who provide investment advice for a fee or other compensation." *Reich v. Stangl*, 73 F.3d 1027, 1029 (10th Cir. 1996) (internal citations and quotations omitted).[2] If a person is not a "named fiduciary" under 29 U.S.C. § 1102(a), he or she may nevertheless be a functional fiduciary. 29 U.S.C. § 1102(a); *Reich*, 73 F.3d at 1029. As the statute explains,

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice

---

[2] "Whether a party is an ERISA fiduciary is a mixed question of fact and law." *David P. Coldesina, D.D.S., P.C. v. Estate of Simper*, 407 F.3d 1126, 1131 (10th Cir. 2005). However, when the facts are not in dispute, "a party's status as an ERISA fiduciary is purely a question of law." *Hamilton v. Carell*, 243 F.3d 992, 997 (6th Cir. 2001) (cited approvingly by *Coldesina*, 407 F.3d at 1131).

> for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). Courts conduct a "functional analysis" to determine whether an entity is a fiduciary under the statute. *Coldesina*, 407 F.3d at 1132. "The threshold question is . . . whether [the person] was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).

Plaintiff's complaint alleges that "[defendant] exercised some degree of authority or control over the management and disposition of RSPT assets." Docket No. 1 at 5, ¶ 24. Defendant, however, argues that the allegations in the complaint only state that defendant was an "asset custodian with possession and custody of certain RSPT assets," and that as such it did not have the requisite "authority or control" to be an ERISA fiduciary. Docket No. 37 at 8.

Although the Tenth Circuit has not addressed whether an asset custodian has "authority and control," other circuit courts have. In *McLemore v. Regions Bank*, 682 F.3d 414, 423 (6th Cir. 2012), the Sixth Circuit concluded that a bank did not qualify as an ERISA fiduciary because "[c]ustody of plan assets alone cannot establish control sufficient to confer fiduciary status." The bank "facilitated" the plan's third-party administrator's "withdrawals and transfers, received . . .deposits for plan accounts, and held plan assets," performing the functions of "an ordinary depositary bank." *Id*. at 418. The Sixth Circuit emphasized that the statute requires courts to "focus on the extent of [the alleged fiduciary's] control over plan assets, rather than on what [he or she] knew

6

or should have known." *Id*. at 423. Because the trustee and the third-party administrator "maintained the accounts and directed all account activity" while the bank "merely held the funds on deposit," the Sixth Circuit concluded that the bank did not have the requisite "control" over plan assets to confer fiduciary status under ERISA. *Id*.

Ninth Circuit precedent points in the same direction. In *IT Corp. v. General American Life Ins. Co.*, 107 F.3d 1415, 1419 (9th Cir. 1997), defendant was a third-party administrator responsible for processing claims under plaintiff's ERISA plan and paying or denying the claims. Defendant also had checkwriting authority. *Id*. The court concluded that defendant was not entitled to summary judgment on the issue of fiduciary status because defendant's "authority to instruct the plan's bank to pay money . . . cannot be reconciled with holding that it is a non-fiduciary as a matter of law." *Id*. at 1422. Further, the court concluded that an entity avoids fiduciary responsibility if it performs "purely ministerial duties," based on "what [the duties] are" rather than "how the duties are characterized." *Id*. at 1419. Observing that "authority over a plan's money is not the same thing as being a depository of the money," the court contrasted defendant's position with that of a bank, which has "no authority or control entitling it to pay anyone but payees and endorsers on checks." *Id*. at 1422 (citing *Ariz. State Carpenters Pension Trust Fund v. Citibank (Ariz.)*, 96 F.3d 1310, 1317 (9th Cir. 1996)).

Here, the question is whether plaintiff's complaint alleges sufficient facts about defendant's authority and control over plan assets to entitle her to relief. Plaintiff alleges that defendant served as the plan's "asset custodian," who contracted with HWA and Hutcheson to provide "custodial services" to RSPT through a Custodial

7

Agreement. *See* Docket No. 1 at 4, ¶¶ 14, 16. The complaint makes various allegations regarding the discretion exercised by defendant, but those examples are of a type different from the transfers at issue. Plaintiff alleges that, under the Custodial Agreement, defendant was to "purchase or sell only securities that comply with [defendant's] and/or its affiliate's policies and procedures relating to acceptable securities." Docket No. 1 at 4, ¶ 17. Plaintiff further alleges that defendant would "hold only those categories of assets mutually agreed to between [RSPT] and [defendant]." *Id.*, ¶ 20. Plaintiff claims that, as a result, defendant had "some amount of discretionary authority or control" regarding management of RSPT assets, and "some degree of authority or control" over the disposition of RSPT assets. *Id.* at 5, ¶¶ 23-24.

These allegations are all contradicted by the text of the Custodial Agreement, which a court can consider on a motion to dismiss because plaintiff has attached it to the complaint. *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). The Custodial Agreement states that "[n]othing in this [a]rticle shall be construed to impose investment discretion on [defendant] or its affiliates." *See* Docket No. 1-2 at 10. This provision is consistent with the Custodial Agreement as a whole, which provides that HWA would "control and manage the investment" of the account, except to the extent that it delegated authority to participants and beneficiaries, investment managers, or designated representatives (such as ASPire). *See id.* at 9. The Custodial Agreement states that defendant had "no responsibility to see that any investment directions comply with the terms of [RSPT]." *See id.* Nothing in the Custodial Agreement indicates that defendant had anything more than ministerial authority to purchase and

sell securities.  Even if defendant did have investment discretion, however, the case law is clear that the relevant discretion in determining whether it is an ERISA fiduciary is discretion to make transfers.  *See McLemore*, 682 F.3d at 423; *IT Corp.*, 107 F.3d at 1422.

The transfers at issue in this case also do not reflect the exercise of any discretion.  Plaintiff alleges that Hutcheson instructed ASPire to have defendant transfer RSPT assets to an account controlled by Hutcheson.  Docket No. 1 at 6, ¶ 28.  Defendant followed the instruction.  *Id*., ¶ 29.  Plaintiff also alleges that Hutcheson instructed ASPire to liquidate RSPT assets and purchase a fixed-income bank note with the funds raised.  *Id*., ¶ 30.  Defendant followed this instruction.  *Id*., ¶ 32.  Defendant's actions reflect adherence to the Custodial Agreement, which provides that ASPire is authorized to instruct defendant on HWA's behalf and that defendant had no duty to investigate those instructions.  *See* Docket No. 1-2 at 8.  While plaintiff says these provisions are void, *see* Docket No. 38 at 12-13, that argument holds true only if the Court assumes that defendant is a fiduciary.  Plaintiff provides no authority suggesting that a custodian such as defendant cannot define its role through a written contract that disclaims fiduciary status when, in practice, the nature of its duties is consistent with a lack of control over plan assets.

Applying the fiduciary test, the Court concludes that defendant had no discretion regarding ASPire's instructions.  The Custodial Agreement is clear that defendant serves as a "non-discretionary, directed custodian."  *See* Docket No. 1-2 at 7.  The parties to the Custodial Agreement agreed that defendant could rely on instructions

from ASPire and would be under "no duty to make an investigation" of instructions received from ASPire. *See id.* at 8. Further, the agreement states that HWA is "solely responsible for managing the investment of the [a]ccount and for the direction and supervision of" ASPire. *See id*. The Custodial Agreement, therefore, establishes that defendant's role was merely to hold RSPT's accounts in custody. This is insufficient to confer fiduciary status. *See McLemore*, 682 F.3d at 423 (a bank is not a fiduciary where the trustee and third-party administrator direct all account activity); *IT Corp.*, 107 F.3d at 1419 (an entity avoids fiduciary responsibility if it performs "purely ministerial duties").

Plaintiff argues that guidance issued by the Department of Labor says that a "directed trustee" has a duty to question, to investigate, and to refuse to follow directions if it has reason to believe such directions are not consistent with the plan or ERISA. *See* Docket No. 38 at 9-10 (citing DOL Advisory Opinion 1992-23A (Oct. 27, 1992) and DOL Field Assistance Bulletin 2004-3 (Dec. 17, 2004)). However, as defendant points out, this guidance applies only if the party is a "directed trustee" in the first place. A directed trustee *is* a fiduciary. An ERISA trustee must be "either named in the trust instrument or in the plan instrument" or "appointed by a person who is a named fiduciary." 29 U.S.C. § 1103(a). Neither the Plan Agreement nor the Custodial Agreement states anywhere that defendant is a "trustee." *See* Docket No. 1-1 and 1-2. Therefore, plaintiff's argument fails.

The Court concludes that plaintiff's complaint fails to plausibly allege that defendant is a fiduciary under ERISA. Therefore, the Court will grant defendant's motion to dismiss with respect to plaintiff's first two claims.

### B. State Law Claims

#### 1. Subject Matter Jurisdiction

Before the Court proceeds to plaintiff's state law claims, the Court must be satisfied that it has jurisdiction to hear the remaining claims. Plaintiff alleges that the Court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 1367 (federal question jurisdiction over the ERISA claims and supplemental jurisdiction over the related claims). Docket No. 1 at 2, ¶ 5. Alternatively, plaintiff alleges that the Court has jurisdiction pursuant to 28 U.S.C. § 1332 (diversity jurisdiction). *Id*. at 2, ¶ 6.

Plaintiff's remaining claims arise under state law. Although the Court may exercise supplemental jurisdiction over state law claims if there is a jurisdictional basis for doing so, 28 U.S.C. § 1367(c)(3) provides that a district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." The Tenth Circuit has instructed that, "if federal claims are dismissed before trial, leaving only issues of state law," courts should "decline to exercise pendent jurisdiction . . . absent compelling reasons to the contrary." *Brooks v. Gaenzle*, 614 F.3d 1213, 1229-30 (10th Cir. 2010) (brackets, internal citations, and internal quotation marks omitted). Since the state law claims are subject to dismissal without prejudice if federal question jurisdiction was the only basis for jurisdiction, the Court must satisfy itself that diversity jurisdiction exists over plaintiff's

state-law claims. Section 1332(a)(1) states: "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between [] citizens of different States." The complaint states that plaintiff is "a citizen of Tennessee" and that defendant is "a foreign company incorporated in Colorado with its principal place of business in Colorado." Docket No. 1 at 2, ¶¶ 1, 6. Therefore, the Court is satisfied that it has jurisdiction under 28 U.S.C. § 1332 and proceeds to plaintiff's state law claims.

### 2. *Professional Negligence*

Plaintiff's third claim is for professional negligence. Plaintiff alleges that defendant owed a duty of care to RSPT and that defendant's breach of that duty caused damages to RSPT. Docket No. 1 at 15, ¶¶ 75-78. Defendant, in response, argues that: (1) this claim is barred by the statute of limitations; (2) the claim is barred by the economic loss rule; and (3) plaintiff waived any claims for negligence. Docket No. 37 at 11-14.

First, the Court must decide which state's law applies. Plaintiff originally filed this case in Idaho, and her complaint alleges that the source of defendant's professional duty is Idaho law. Docket No. 1 at 15, ¶ 80. The district court in Idaho found that it did not have personal jurisdiction over defendant and transferred the case to Colorado pursuant to 28 U.S.C. § 1406(a). Docket No. 30 at 11-12. In a situation where the transferor court lacks personal jurisdiction, "the choice of law rules of the transferee court apply." *Doering ex rel. Barrett v. Copper Mountain, Inc.*, 259 F.3d 1202, 1209 (10th Cir. 2001). Therefore, the Court applies Colorado's choice of law rules. "In resolving choice of law issues in tort actions, Colorado follows the 'most significant

relationship' approach of the Restatement (Second) of Conflict of Laws (1971)." *Hawks v. AGRI Sales, Inc.*, 60 P.3d 714, 715 (Colo. App. 2001) (citing *First National Bank v. Rostek*, 514 P.2d 314 (Colo. 1973)). Courts applying this test evaluate where the injury occurred; where the injury-causing conduct occurred; the residence, place of incorporation, and place of business of the parties; and where the parties' relationship is centered. Restatement (Second) of Conflict of Laws § 145(2).

On review of the complaint and attached exhibits, the Court concludes that Colorado law applies. The Custodial Agreement states that "[a]ll contributions to, and payments from, the [a]ccount shall be deemed to take place in . . . Colorado." *See* Docket No. 1-2 at 15. Therefore, the parties to that agreement intended that the injuries here – loss of RSPT assets – be considered to have occurred in Colorado and were caused by injury in Colorado. The complaint also states that defendant is incorporated and has its principal place of business in Colorado. *See* Docket No. 1 at 2, ¶ 6. Finally, the Custodial Agreement indicates that the agreement "shall be construed and interpreted according to the laws of . . . Colorado." *See* Docket No. 1-2 at 15. Although RSPT was not a party to the Custodial Agreement, plaintiff offers no evidence or argument based on the Custodial Agreement or anything else that another state's law should apply to her state law claims. *See* Docket No. 38.

"While the statute of limitations is an affirmative defense, when the dates given in the complaint make clear that the right sued upon has been extinguished, the plaintiff has the burden of establishing a factual basis for tolling the statute." *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980). Under Colorado law,

a tort action for negligence "must be commenced within two years after the cause of action accrues." Colo. Rev. Stat. § 13-80-102. This action commenced on December 30, 2016. Docket No. 1. The complaint states that the transactions that allegedly constituted professional negligence occurred in December 2010. *Id*. at 6, ¶¶ 29, 32. Plaintiff argues that the cause of action accrued in 2012, when she was appointed as fiduciary. Docket No. 1 at 8, ¶ 46; Docket No. 38 at 16. However, as this was more than two years before the complaint was filed, plaintiff has the burden of establishing a "factual basis" for tolling the statute. *See Aldrich*, 627 F.2d at 1041 n.4. Plaintiff states in her response that she entered into tolling agreements with defendant in the intervening years, preserving the applicable statute of limitations. Docket No. 38 at 16. Defendant disputes plaintiff's summary of the agreements, arguing that more than two years elapsed while the tolling agreements did not apply. Docket No. 45 at 7-8.[3] As plaintiff has not offered the text of these agreements in support of her argument, the Court finds that she has not established a factual basis to support tolling the statute of limitations. Accordingly, the Court will dismiss her claim for professional negligence as barred by the statute of limitations.

---

[3] Plaintiff's complaint does not state a specific date when she was appointed as fiduciary, only stating that Hutcheson was indicted in April 2012. *See* Docket No. 1 at 8, ¶ 47. Defendant offers two agreements indicating that the statute of limitations period was tolled from May 17, 2013 to July 31, 2014, and from March 3, 2016 to the time the complaint was filed. *See* Docket No. 45-2 & 45-3. Even giving plaintiff the benefit of calling the accrual date April 30, 2012, more than a year elapsed before the first tolling period began, and more than a year elapsed between the expiration of the first tolling period and the start of the second.

### 3. *State Law Breach of Fiduciary Duty*

Plaintiff makes a claim for breach of fiduciary duty "under Idaho (and other state) laws." Docket No. 1 at 15, ¶ 80. Defendant argues that plaintiff's failure to plausibly allege a fiduciary relationship between defendant and RSPT is fatal to her claim and that the "economic loss rule" separately bars the claim. Docket No. 37 at 16. As discussed above, the Court applies Colorado law.

"The breach of fiduciary duty cause of action is a tort to remedy economic harm suffered by one party due to a breach of duties owed in a fiduciary relationship." *Accident & Injury Med. Specialists, P.C. v. Mintz*, 279 P.3d 658, 663 (Colo. 2012). Here, the Custodial Agreement regulates the relationship between defendant and the trustee; therefore, defendant claims that the agreement controls the scope of the parties' relationship.

In order to maintain a distinction between tort and contract law, the Colorado Supreme Court has adopted the "economic loss rule." *See Town of Alma v. AZCO Const., Inc.*, 10 P.3d 1256, 1262 (Colo. 2000). Under this rule, "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." *Id*. at 1264. However, under the "special relationships" exception, "some special relationships by their nature automatically trigger an independent duty of care that supports a tort action even when the parties have entered into a contractual relationship." *Id.* at 1263. Special relationships exist where there is a "risk of damages to interests that contract law is not well suited to protect." *A Good Time Rental, LLC v.*

15

*First Am. Title Agency, Inc.*, 259 P.3d 534, 540 (Colo. App. 2011). Colorado courts have recognized six types of special relationships: (1) common carrier/passenger, (2) innkeeper/guest, (3) possessor of land/invited entrant, (4) employer/employee, (5) parent/child, and (6) hospital/patient. *Univ. of Denver v. Whitlock*, 744 P.2d 54, 58 (Colo. 1987).

Plaintiff alleges that defendant was a fiduciary under state law and that RSPT suffered only economic loss. *See* Docket No. 1 at 15-16, ¶¶ 79-82. As the Custodial Agreement, a contract, appears to regulate the relationship between defendant an RSPT, a straightforward application of the economic loss bars plaintiff's claim unless she identifies an independent duty of care owed by the defendant under tort law. *Town of Alma*, 10 P.3d at 1262. Plaintiff suggests two possible sources for an "independent duty of care" under tort law not arising from the Custodial Agreement: ERISA and a "special relationship." For the reasons discussed in § III.A of this order, the Court concludes that ERISA does not give rise to a fiduciary duty on behalf of defendant. Further, the Court declines to extend the special relationship exception to include the relationship between a trustee and an asset custodian, given that a trustee's interests can be adequately protected through either contract law or tort law without a special relationship.

Given that the complaint does not contain plausible allegations to support plaintiff's theory that defendant was a state-law fiduciary, the Court will dismiss her Fourth Claim.[4]

---

[4] Plaintiff's Fifth Claim requests reasonable attorney's fees for prosecution of the action under 29 U.S.C. § 1132(g) and Fed. R. Civ. Proc. 54. Docket No. 1 at 16, ¶¶ 83-

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendant's Renewed Motion to Dismiss the Complaint and Brief In Support [Docket No. 37] is **GRANTED**. It is further

**ORDERED** that plaintiff's claims are dismissed with prejudice. It is further

**ORDERED** that, within 14 days of the entry of judgment, defendants may have their costs by filing a bill of costs with the Clerk of the Court. It is further

**ORDERED** that this case is closed.

DATED March 25, 2019.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
Chief United States District Judge

---

84. "[A] fees claimant must show some degree of success on the merits before a court may award attorney's fees under § 1132(g)(1)." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010). Since plaintiff's other claims have not survived, this claim must also be dismissed.